**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**
www.flmb.uscourts.gov

In re:

NATHAN ROBERT CHOUINARD					Case No.: 9:14-bk-11967-FMD
and JACI LEIGH CHOUINARD,

      Debtors.							Chapter 13

_____/

**MOTION TO SELL HOMESTEAD AND FOR OTHER RELIEF,**
**AND REQUEST FOR ADDITIONAL COUNSEL FEES**

> **Notice of Opportunity to Object and Request for Hearing**
>
> Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within 21 days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.
>
> If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at 801 Florida Avenue #7, Tampa, FL 33602, and serve a copy on the movant's attorney, Brian D. Zinn, LLC, 1342 Colonial Boulevard, Suite K230, Fort Myers, Florida 33907, and any other appropriate persons within the time allowed.  If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing, or consider the response and grant or deny the relief requested without a hearing.
>
> If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

      COME NOW, Nathan Robert Chouinard and Jaci Leigh Chouinard, the Debtors in the above-captioned matter, by and through the undersigned counsel, and request that the Court approve the sale of their homestead pursuant to a Contract for Sale recently reached with a prospective buyer, and allow them to amend their exemptions to claim a homestead exemption,

and as grounds therefor state as follows:

1. The Debtors filed the within bankruptcy case on October 10, 2014. The Debtors' Plan was confirmed on April 13, 2015.

2. Pursuant to Schedule C of their initial Petition, the Debtors exempted 100% of the value of their homestead, located at 17855 Chesterfield Rd., North Fort Myers, FL 33917, under authority of Fla. Const. art. X, §4(a)(1).

3. However, the Debtors fell behind on their mortgage payments, and decided to surrender their home in the bankruptcy, and changed their schedules to no longer claim the homestead exemption (and instead claimed exemptions under Fla. Stat. §222.25(4)). Since the Debtors were paying the mortgage through the Trustee's Office, this reduced their Plan payment. An Order Granting Debtors' Motion to Modify Confirmed Plan and Request for Additional Counsel Fees (Doc. 47) was issued approving this.

4. Although the home will likely go into foreclosure shortly, the Debtors have found a prospective buyer for their homestead for a purchase price of $185,000, the majority of which will pay off the existing mortgage of $133,844.52. Copies of the sale contract and mortgage payoff are annexed hereto.

5. The Debtors respectfully request that they be allowed to sell the property, change their exemptions to exempt the homestead pursuant to Fla. Const. art. X, §4(a)(1), eliminate their exemptions claimed pursuant to Fla. Stat. §222.25(4), and retain the proceeds of the sale of their homestead.

6. The Debtors have retained the undersigned to prepare and file this Motion, and if necessary, appear at a hearing on this Motion. These services were not included in the Debtors' initial Retainer Agreement with counsel. It is respectfully requested that the Court allow

additional counsel fees to the undersigned in the amount of $400 if a Court appearance is necessary or $300 if no appearance is necessary.

WHEREFORE, it is respectfully requested that the Court approve the sale of the homestead and award additional counsel fees to Debtors' counsel as set forth above.

BRIAN D. ZINN, LLC
*Counsel for Debtors*
1342 Colonial Boulevard, Suite K-230
Fort Myers, FL  33907
Telephone:  (239) 418-1529
Facsimile:  (239) 236-0295


\_\_\_/s/ Brian D. Zinn_____
Brian D. Zinn, Esq.
Fla. Bar No. 012497
brian@zinn.law
www.zinn.law


**DECLARATION CONCERNING DEBTORS' MOTION TO SELL HOMESTEAD AND FOR OTHER RELIEF, AND REQUEST FOR ADDITIONAL COUNSEL FEES**

I declare under penalty of perjury that I have read the foregoing Motion, and that it is true and correct to the best of my knowledge, information, and belief.


Date:\_\_\_\_\_4/15/2018_____          \_\_\_/s/ Nathan Robert Chouinard_____
                                                                                         Nathan Robert Chouinard



Date:\_\_\_\_\_4/15/2018_____          \_\_\_/s/ Jaci Leigh Chouinard_____
                                                                                         Jaci Leigh Chouinard



P.O Box 55004
Irvine, CA 92618
888.504.6700 toll free
949.341.2200 fax
www.rushmorelm.com

**PAYOFF STATEMENT**

March 16, 2018

Esperanza Barbosa
Rlms

Loan No: ███████
Loan Type:   Conventional
Noteholder: Mtglq Investors, L.p.

RE:
Nathan R Chouinard
Jaci L Chouinard
9901 Merle Dr
North Fort Myers FL 33917

Property Address:
17855 Chesterfield Ro
North Fort Myers FL 33917

```
**************************************************************
ONLY CERTIFIED FUNDS WILL BE ACCEPTED FOR THE PAYOFF SHOWN BELOW.
**************************************************************
```

These figures are good to March 31, 2018. (the "Good-Through Date")
This loan is due for the February 01, 2016 payment.

| | |
|---|---:|
| The current total unpaid Principal Balance is:    $ | 113,657.86 |
| Interest at 3.12500% | 9,016.35 |
| Escrow/Impound Overdraft | 7,345.84 |
| Suspense Balance | -1,057.18 |
| Unpaid Late Charges | 35.90 |
| Recoverable Corporate Advances | 4,779.25 |
| Recon/Recording Fee | 36.50 |
| Property Inspection | 30.00 |
| Short Interest | .00 |
| * * * * TOTAL AMOUNT TO PAY LOAN IN FULL * * * * * $ | 133,844.52 |
| 2nd Principal Balance | .00 |
| Deferred Interest Balance | .00 |

The total unpaid Principal Balance includes the 2nd Principal Balance,
Deferred Interest Balance, Principal Reduction Amount (HAMP incentive)
and/or a Forbearance Amount.



EQUAL HOUSING LENDER



P.O Box 55004
Irvine, CA  92618
888.504.6700 toll free
949.341.2200 fax
www.rushmorelm.com

Loan No: ███████
Property Address:
17855 Chesterfield Ro
North Fort Myers FL 33917

If the loan is less than 30 days past due the Principal Reduction Amount is deducted from the total amount due.

Funds received on or after March 31, 2018 will require an additional $ 12.46 interest per Day.

Payoff funds being sent by mail must be directed to:

    Rushmore Loan Management Services LLC
        Attn: Payoff Department
    15480 Laguna Canyon Road Suite 100
    Irvine, CA 92618

These figures are subject to final verification by the Noteholder. Figures may be adjusted if any check/money order previously received is rejected by the institution upon which it was drawn.

Any amounts included in the Estimated Fees and Costs section of this letter anticipate certain actions we must take before the Good-Through Date pursuant to our rights and duties under the Loan Documents. These Estimated Fees and Costs are expenses related to the servicing of your loan we have already incurred but not yet received an invoice for or for which we anticipate incurring on or before the Good-Through Date. There may be additional fees incurred for which you are responsible that are unknown as of the date of this letter and which are not included above. Estimated Fees and Costs may include, but are not limited to, expenses for items such as escrow advances for property taxes, insurance, legal fees and costs, or other advances necessary and permissible under the Loan Documents. You do not have to pay for any fees or costs not incurred by the time your full payment is received. In the event you submit a payment for more than the total amount owed at the time the payment is received, we will refund you the difference.





P.O Box 55004
Irvine, CA  92618
888.504.6700 toll free
949.341.2200 fax
www.rushmorelm.com

Loan No: ▮▮▮▮▮▮▮▮
Property Address:
17855 Chesterfield Ro
North Fort Myers FL 33917

Issuance of this statement does not suspend the contract requirement to make the mortgage payments when due.  A late charge of $ 35.90 will be assessed 15 days after a current payment is due and should be added to the payoff total if received after that time.  All past due amounts are included in the above figures.

If this property is sold, please provide the seller's forwarding address.

PAYOFF DEPARTMENT

XP011-075/MF4





P.O Box 55004
Irvine, CA 92618
888.504.6700 toll free
949.341.2200 fax
www.rushmorelm.com

# RUSHMORE LOAN MANAGEMENT SERVICES LLC

## WIRING INSTRUCTIONS

Please wire funds to:

| | |
|---|---|
| Institution: | Wells Fargo |
| ABA Routing Number: | ▮▮▮▮▮▮▮▮▮ |
| Account Number: | |
| Reference: | Loan Number |
| | Borrower Name |
| | |
| Attn: | Cashiering Department |
| Beneficiary: | Rushmore Loan Management LLC |
| | 15480 Laguna Canyon Road |
| | Suite 100 |
| | Irvine, CA 92618 |
| | |
| Customer Service: | ▮▮▮▮▮▮▮▮▮ |



**THIS FORM HAS BEEN APPROVED BY THE FLORIDA ASSOCIATION OF REALTORS® AND THE FLORIDA BAR**

## Contract For Sale And Purchase
FLORIDA ASSOCIATION OF REALTORS® AND THE FLORIDA BAR

1* **PARTIES:** Chouinard Nathan R + ~~Connelly~~, Jaci L., ~~JT~~ MARRIED CHOUINARD ("Seller"),
2* and Green, Michael S. ("Buyer"),
3  hereby agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property (collectively "Property")
4  pursuant to the terms and conditions of this Contract for Sale and Purchase and any riders and addenda ("Contract"):
5  **I. DESCRIPTION:**
6*    (a) Legal description of the Real Property located in Lee County, Florida: Colonial Pines
7*        Block A - PB 36 PG 28 Lot 18
8*
9*    (b) Street address, city, zip, of the Property: 17855 Chesterfield Rd., N. Ft. Myers, FL 33917
10    (c) Personal Property includes existing range(s), refrigerator(s), dishwasher(s), ceiling fan(s), light fixture(s), and window treatment(s) unless
11       specifically excluded below.
12*   Other items included are: Well equipment
13*
14*   Items of Personal Property (and leased items, if any) excluded are: N/A
15

16* **II. PURCHASE PRICE** (U.S. currency): . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 185,000.00
17    **PAYMENT:**
18*   (a) Deposit held in escrow by To be determined (Escrow Agent) in the amount of (checks subject to clearance) $ 0.00
19*   (b) Additional escrow deposit to be made to Escrow Agent within 5 days after Effective Date
20*       (see Paragraph III) in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 5,000.00
21*   (c) Financing (see Paragraph IV) in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 166,500.00
22*   (d) Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00
23    (e) Balance to close by cash, wire transfer or LOCALLY DRAWN cashier's or official bank check(s), subject
24*       to adjustments or prorations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 13,500.00

25 **III. TIME FOR ACCEPTANCE OF OFFER AND COUNTEROFFERS; EFFECTIVE DATE:**
26    (a) If this offer is not executed by and delivered to all parties OR FACT OF EXECUTION communicated in writing between the parties on or
27*       before 4/2/2018, the deposit(s) will, at Buyer's option, be returned and this offer withdrawn. **UNLESS OTH-**
28        **ERWISE STATED, THE TIME FOR ACCEPTANCE OF ANY COUNTEROFFERS SHALL BE 2 DAYS FROM THE DATE THE COUN-**
29        **TEROFFER IS DELIVERED.**
30    (b) The date of Contract ("Effective Date") will be the date when the last one of the Buyer and Seller has signed or initialed this offer or the
31    final counteroffer. If such date is not otherwise set forth in this Contract, then the "Effective Date" shall be the date determined above for
32    acceptance of this offer or, if applicable, the final counteroffer.

33 **IV. FINANCING:**
34*   ☐ (a) This is a cash transaction with no contingencies for financing;
35*   ☐ (b) This Contract is contingent on Buyer obtaining approval of a loan ("Loan Approval") within 45 days (if blank, then 30 days) after
36*       Effective Date ("Loan Approval Date") for (CHECK ONLY ONE): ☐ a fixed; ☐ an adjustable; or ☐ a fixed or adjustable rate loan, in the prin-
37*       cipal amount of $ 166,500.00, at an initial interest rate not to exceed 4.50 %, discount and origination fees not to exceed
38*       0.00 % of principal amount, and for a term of 30 years. Buyer will make application within 5 days (if blank, then 5 days) after
39        Effective Date. Buyer shall use reasonable diligence to: obtain Loan Approval **and notify Seller in writing of Loan Approval by Loan**
40        **Approval Date;** satisfy terms and conditions of the Loan Approval; and close the loan. Loan Approval which requires a condition related to
41        the sale of other property shall not be deemed Loan Approval for purposes of this subparagraph. Buyer shall pay all loan expenses. If Buyer
42        does not deliver written notice to Seller by Loan Approval Date stating Buyer has either obtained Loan Approval or waived this financing con-
43        tingency, then either party may cancel this Contract by delivering written notice ("Cancellation Notice") to the other, not later than seven (7)
44        days prior to Closing. Seller's Cancellation Notice must state that Buyer has three (3) days to deliver to Seller written notice waiving this
45        financing contingency. If Buyer has used due diligence and has not obtained Loan Approval before cancellation as provided above, Buyer
46        shall be refunded the deposit(s). Unless this financing contingency has been waived, this Contract shall remain subject to the satisfaction,
47        by Closing, of those conditions of Loan Approval related to the Property;
48*   ☐ (c) Assumption of existing mortgage (see rider for terms); or
49*   ☐ (d) Purchase money note and mortgage to Seller (see Standards B and K and riders; addenda; or special clauses for terms).

50* **V. TITLE EVIDENCE:** At least 5 days (if blank, then 5 days) before Closing a title insurance commitment with legible copies of instruments
51    listed as exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see Standard A for terms) shall
52    be obtained by:
53*   (CHECK ONLY ONE): ☑ (1) Seller, at Seller's expense and delivered to Buyer or Buyer's attorney; or
54*                      ☐ (2) Buyer at Buyer's expense.
55    (CHECK HERE): ☐ If an abstract of title is to be furnished instead of title insurance, and attach rider for terms.
56* **VI. CLOSING DATE:** This transaction shall be closed and the closing documents delivered on 5/17/2018 or before ("Closing"), unless
57    modified by other provisions of this Contract. If Buyer is unable to obtain Hazard, Wind, Flood, or Homeowners' insurance at a reasonable rate
58    due to extreme weather conditions, Buyer may delay Closing for up to 5 days after such coverage becomes available.
59 **VII. RESTRICTIONS; EASEMENTS; LIMITATIONS:** Seller shall convey marketable title subject to: comprehensive land use plans, zoning,
60    restrictions, prohibitions and other requirements imposed by governmental authority; restrictions and matters appearing on the plat or otherwise

FAR/BAR-7s    Rev. 7/04    © 2004    Florida Association of REALTORS® and The Florida Bar    All Rights Reserved    Page 1 of 4

61 common to the subdivision; outstanding oil, gas and mineral rights of record without right of entry; public utility easements of record
62 (located contiguous to real property lines and not more than 10 feet in width as to the rear or front lines and 7 1/2 feet in width as to the side
63 lines); taxes for year of Closing and subsequent years; and assumed mortgages and purchase money mortgages, if any (if additional items, see
64 addendum); provided, that there exists at Closing no violation of the foregoing and none prevent use of the Property for
65* residential _____ purpose(s).
66 **VIII. OCCUPANCY:** Seller shall deliver occupancy of Property to Buyer at time of Closing unless otherwise stated herein. If Property is intended
67 to be rented or occupied beyond Closing, the fact and terms thereof and the tenant(s) or occupants shall be disclosed pursuant to Standard F.
68 If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to Property from date of occupancy, shall be responsible and liable
69 for maintenance from that date, and shall be deemed to have accepted Property in its existing condition as of time of taking occupancy.
70 **IX. TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Typewritten or handwritten provisions, riders and addenda shall control all printed pro-
71 visions of this Contract in conflict with them.
72* **X. ASSIGNABILITY:** (CHECK ONLY ONE): Buyer ☒ may assign and thereby be released from any further liability under this Contract; ☐ may
73* assign but not be released from liability under this Contract; or ☐ may not assign this Contract.
74 **XI. DISCLOSURES:**
75* (a) ☐ CHECK HERE if the Property is subject to a special assessment lien imposed by a public body payable in installments which
76* continue beyond Closing and, if so, specify who shall pay amounts due after Closing: ☐ Seller ☐ Buyer ☐ Other (see addendum).
77 (b) Radon is a naturally occurring radioactive gas that when accumulated in a building in sufficient quantities may present health risks to per-
78 sons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida.
79 Additional information regarding radon or radon testing may be obtained from your County Public Health unit.
80 (c) Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or desires additional information
81 regarding mold, Buyer should contact an appropriate professional.
82 (d) Buyer acknowledges receipt of the Florida Energy-Efficiency Rating Information Brochure required by Section 553.996, F.S.
83 (e) If the real property includes pre-1978 residential housing then a lead-based paint rider is mandatory.
84 (f) If Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act, the parties shall comply with that Act.
85 (g) **BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIA-**
86 **TION/COMMUNITY DISCLOSURE.**
87 (h) PROPERTY TAX DISCLOSURE SUMMARY: BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT
88 OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNER-
89 SHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES.
90 IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.
91 **XII. MAXIMUM REPAIR COSTS:** Seller shall not be responsible for payments in excess of:
92* (a) $ 0 for treatment and repair under Standard D (if blank, then 1.5% of the Purchase Price).
93* (b) $ 0 for repair and replacement under Standard N not caused by Wood Destroying Organisms (if blank, then 1.5%
94 of the Purchase Price).
95* **XIII. HOME WARRANTY:** ☐ Seller ☐ Buyer ☒ N/A will pay for a home warranty plan issued by _____
96* at a cost not to exceed $_____.
97 **XIV. RIDERS; ADDENDA; SPECIAL CLAUSES:** CHECK those riders which are applicable AND are attached to and made part of this Contract:
98* ☐ CONDOMINIUM  ☐ VA/FHA  ☐ HOMEOWNERS' ASSN.  ☐ LEAD-BASED PAINT  ☐ COASTAL CONSTRUCTION CONTROL LINE
99* ☐ INSULATION  ☐ "AS IS"  ☐ Other Comprehensive Rider Provisions  ☐ Addenda
100* Special Clause(s): Seller shall pay all buyer closing costs, included but not limited to Doc stamps
101* on mortgage, survey, appraisal fees, termite inspection, etc., not to exceed $5,000 AT CLOSING.
102* CREDIT
103* CONTRACT IS SUBJECT TO APPROVAL OF SELLER'S BANKRUPTCY TRUSTEE.
104 **XV. STANDARDS FOR REAL ESTATE TRANSACTIONS ("Standards"):** Buyer and Seller acknowledge receipt of a copy of Standards A
105 through Y on the reverse side or attached, which are incorporated as part of this Contract.
106 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD,**
107 **SEEK THE ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**
108 THIS FORM HAS BEEN APPROVED BY THE FLORIDA ASSOCIATION OF REALTORS® AND THE FLORIDA BAR.
109 Approval does not constitute an opinion that any of the terms and conditions in this Contract should be accepted by the parties in a
110 particular transaction. Terms and conditions should be negotiated based upon the respective interests, objectives and bargaining
111 positions of all interested persons.
112 AN ASTERISK(*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO BE COMPLETED.
113* _____  3/31/18  _____  4/2/2018
114 (BUYER)         (DATE)    (SELLER)         (DATE)
115* _____  _____  _____  4/2/18
116 (BUYER)         (DATE)    (SELLER)         (DATE)
117* Buyers' address for purposes of notice 17850 Leetana Rd          Sellers' address for purposes of notice _____
118* N. Ft. Myers, FL 33917 _____
119 (239) 258-4091 _____ Phone  _____ Phone
120 **BROKERS:** The brokers (including cooperating brokers, if any) named below are the only brokers entitled to compensation in connection with
121 this Contract:
122* Name: _____N/A_____          _____N/A_____
123 Cooperating Brokers, if any        Listing Broker

FAR/BAR-7s   Rev. 7/04   © 2004   Florida Association of Realtors® and The Florida Bar   All Rights Reserved   Page 2 of 4

**STANDARDS FOR REAL ESTATE TRANSACTIONS**

**A. TITLE INSURANCE:** The Title Insurance shall be issued by a Florida licensed title insurer agreeing to issue Buyer, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the purchase price, insuring Buyer's marketable title to the Real Property, subject only to matters contained in Paragraph VII and those to be discharged by Seller at or before Closing. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law. Buyer shall have 5 days from date of receiving the Title Commitment to examine it, and if title is found defective, notify Seller in writing specifying defect(s) which render title unmarketable. Seller shall have 30 days from receipt of notice to remove the defects, failing which Buyer shall, within 5 days after expiration of the 30 day period, deliver written notice to Seller either: (1) extending the time for a reasonable period not to exceed 120 days within which Seller shall use diligent effort to remove the defects; or (2) requesting a refund of deposit(s) paid which shall be returned to Buyer. If Buyer fails to so notify Seller, Buyer shall be deemed to have accepted the title as it then is. Seller shall, if title is found unmarketable, use diligent effort to correct defect(s) within the time provided. If, after diligent effort, Seller is unable to timely correct the defects, Buyer shall either waive the defects, or receive a refund of deposit(s), thereby releasing Buyer and Seller from all further obligations under this Contract. If Seller is to provide the Title Commitment and it is delivered to Buyer less than 5 days prior to Closing, Buyer may extend Closing so that Buyer shall have up to 5 days from date of receipt to examine same in accordance with this Standard.

**B. PURCHASE MONEY MORTGAGE; SECURITY AGREEMENT TO SELLER:** A purchase money mortgage and mortgage note to Seller shall provide for a 30 day grace period in the event of default if a first mortgage and a 15 day grace period if a second or lesser mortgage; shall provide for right of prepayment in whole or in part without penalty; shall permit acceleration in event of transfer of the Real Property; shall require all prior liens and encumbrances to be kept in good standing; shall forbid modifications of, or future advances under, prior mortgage(s); shall require Buyer to maintain policies of insurance containing a standard mortgagee clause covering all improvements located on the Real Property against fire and all perils included within the term "extended coverage endorsements" and such other risks and perils as Seller may reasonably require, in an amount equal to their highest insurable value; and the mortgage, note and security agreement shall be otherwise in form and content required by Seller, but Seller may only require clauses and coverage customarily found in mortgages, mortgage notes and security agreements generally utilized by savings and loan institutions or state or national banks located in the county wherein the Real Property is located. All Personal Property and leases being conveyed or assigned will, at Seller's option, be subject to the lien of a security agreement evidenced by recorded or filed financing statements or certificates of title. If a balloon mortgage, the final payment will exceed the periodic payments thereon.

**C. SURVEY:** Buyer, at Buyer's expense, within time allowed to deliver evidence of title and to examine same, may have the Real Property surveyed and certified by a registered Florida surveyor. If the survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, lands of others or violate any restrictions, Contract covenants or applicable governmental regulations, the same shall constitute a title defect.

**D. WOOD DESTROYING ORGANISMS:** "Wood Destroying Organisms" (WDO) shall be deemed to include all wood destroying organisms required to be reported under the Florida Structural Pest Control Act, as amended. Buyer, at Buyer's expense, may have the Property inspected by a Florida Certified Pest Control Operator ("Operator") within 20 days after the Effective Date to determine if there is any visible active WDO infestation or visible damage from WDO infestation, excluding fences. If either or both are found, Buyer may within said 20 days (1) have cost of treatment of active infestation estimated by the Operator; (2) have all damage inspected and cost of repair estimated by an appropriately licensed contractor; and (3) report such cost(s) to Seller in writing. Seller shall cause the treatment and repair of all WDO damage to be made and pay the costs thereof up to the amount provided in Paragraph XII(a). If estimated costs exceed that amount, Buyer shall have the option of canceling this Contract by giving written notice to Seller within 20 days after the Effective Date, or Buyer may elect to proceed with the transaction and receive a credit at Closing equal to the amount provided in Paragraph XII(a). If Buyer's lender requires an updated WDO report, then Buyer shall, at Buyer's expense, have the opportunity to have the Property re-inspected for WDO infestation and have the cost of active infestation or new damage estimated and reported to Seller in writing at least 10 days prior to Closing, and thereafter, Seller shall cause such treatment and repair to be made and pay the cost thereof; provided, Seller's total obligation for treatment and repair costs required under both the first and second inspection shall not exceed the amount provided in Paragraph XII (a).

**E. INGRESS AND EGRESS:** Seller warrants and represents that there is ingress and egress to the Real Property sufficient for its intended use as described in Paragraph VII hereof and title to the Real Property is insurable in accordance with Standard A without exception for lack of legal right of access.

**F. LEASES:** Seller shall, at least 10 days before Closing, furnish to Buyer copies of all written leases and estoppel letters from each tenant specifying the nature and duration of the tenant's occupancy, rental rates, advanced rent and security deposits paid by tenant. If Seller is unable to obtain such letter from each tenant, the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit, and Buyer may thereafter contact tenant to confirm such information. If the terms of the leases differ materially from Seller's representations, Buyer may terminate this Contract by delivering written notice to Seller at least 5 days prior to Closing. Seller shall, at Closing, deliver and assign all original leases to Buyer.

**G. LIENS:** Seller shall furnish to Buyer at time of Closing an affidavit attesting to the absence, unless otherwise provided for herein, of any financing statement, claims of lien or potential lienors known to Seller and further attesting that there have been no improvements or repairs to the Real Property for 90 days immediately preceding date of Closing. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth the names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at the Closing of this Contract.

**H. PLACE OF CLOSING:** Closing shall be held in the county wherein the Real Property is located at the office of the attorney or other closing agent ("Closing Agent") designated by the party paying for title insurance, or, if no title insurance, designated by Seller.

**I. TIME:** In computing time periods of less than six (6) days, Saturdays, Sundays and state or national legal holidays shall be excluded. Any time periods provided for herein which shall end on a Saturday, Sunday, or a legal holiday shall extend to 5:00 p.m. of the next business day. **Time is of the essence in this Contract.**

**J. CLOSING DOCUMENTS:** Seller shall furnish the deed, bill of sale, certificate of title, construction lien affidavit, owner's possession affidavit, assignments of leases, tenant and mortgagee estoppel letters and corrective instruments. Buyer shall furnish mortgage, mortgage note, security agreement and financing statements.

**K. EXPENSES:** Documentary stamps on the deed and recording of corrective instruments shall be paid by Seller. All costs of Buyer's loan (whether obtained from Seller or third party), including, but not limited to, documentary stamps and intangible tax on the purchase money mortgage and any mortgage assumed, mortgagee title insurance commitment with related fees, and recording of purchase money mortgage to Seller, deed and financing statements shall be paid by Buyer. Unless otherwise provided by law or rider to this Contract, charges for the following related title services, namely title evidence, title examination, and closing fee (including preparation of closing statement), shall be paid by the party responsible for furnishing the title evidence in accordance with Paragraph V.

**L. PRORATIONS; CREDITS:** Taxes, assessments, rent, interest, insurance and other expenses of the Property shall be prorated through the day before Closing. Buyer shall have the option of taking over existing policies of insurance, if assumable, in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by prorations to be made through day prior to Closing, or occupancy, if occupancy occurs before Closing. Advance rent and security deposits will be credited to Buyer. Escrow deposits held by mortgagee will be credited to Seller. Taxes shall be prorated based on the current year's tax with due allowance made for maximum allowable discount, homestead and other exemptions. If Closing occurs at a date when the current year's millage is not fixed and current year's assessment is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be agreed upon between the parties; failing which, request shall be made to the County Property Appraiser for an informal assessment taking into account available exemptions. A tax proration based on an estimate shall, at request of either party, be readjusted upon receipt of current year's tax bill.

**M. SPECIAL ASSESSMENT LIENS:** Except as set forth in Paragraph XI(a), certified, confirmed and ratified special assessment liens imposed by public bodies as of Closing are to be paid by Seller. Pending liens as of Closing shall be assumed by Buyer. If the improvement has been substantially completed as of Effective Date, any pending lien shall be considered certified, confirmed or ratified and Seller shall, at Closing, be charged an amount equal to the last estimate or assessment for the improvement by the public body.

198    **STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)**

199    **N. INSPECTION AND REPAIR:** Seller warrants that the ceiling, roof (including the fascia and soffits), exterior and interior walls, foundation, and dockage of
200    the Property do not have any visible evidence of leaks, water damage, or structural damage and that the septic tank, pool, all appliances, mechanical items,
201    heating, cooling, electrical, plumbing systems, and machinery are in Working Condition. The foregoing warranty shall be limited to the items specified unless
202    otherwise provided in an addendum. Buyer may inspect, or, at Buyer's expense, have a firm or individual specializing in home inspections and holding an occu-
203    pational license for such purpose (if required), or by an appropriately licensed Florida contractor, make inspections of, those items within 20 days after the
204    Effective Date. Buyer shall, prior to Buyer's occupancy but not more than 20 days after Effective Date, report in writing to Seller such items that do not meet
205    the above standards as to defects. Unless Buyer timely reports such defects, Buyer shall be deemed to have waived Seller's warranties as to defects not report-
206    ed. If repairs or replacements are required to comply with this Standard, Seller shall cause them to be made and shall pay up to the amount provided in
207    Paragraph XII (b). Seller is not required to make repairs or replacements of a Cosmetic Condition unless caused by a defect Seller is responsible to repair or
208    replace. If the cost for such repair or replacement exceeds the amount provided in Paragraph XII (b), Buyer or Seller may elect to pay such excess, failing which
209    either party may cancel this Contract. If Seller is unable to correct the defects prior to Closing, the cost thereof shall be paid into escrow at Closing. For pur-
210    poses of this Contract: (1) "Working Condition" means operating in the manner in which the item was designed to operate; (2) "Cosmetic Condition" means
211    aesthetic imperfections that do not affect the Working Condition of the item, including, but not limited to: pitted marcite or other pool finishes; missing or torn
212    screens; fogged windows; tears, worn spots, or discoloration of floor coverings, wallpaper, or window treatments; nail holes, scratches, dents, scrapes, chips
213    or caulking in ceilings, walls, flooring, fixtures, or mirrors; and minor cracks in floors, tiles, windows, driveways, sidewalks, or pool decks; and (3) cracked roof
214    tiles, curling or worn shingles, or limited roof life shall not be considered defects Seller must repair or replace, so long as there is no evidence of actual leaks
215    or leakage or structural damage, but missing tiles will be Seller's responsibility to replace or repair.
216    **O. RISK OF LOSS:** If the Property is damaged by fire or other casualty before Closing and cost of restoration does not exceed 1.5% of the Purchase Price, cost
217    of restoration shall be an obligation of Seller and Closing shall proceed pursuant to the terms of this Contract with restoration costs escrowed at Closing. If the
218    cost of restoration exceeds 1.5% of the Purchase Price, Buyer shall either take the Property as is, together with either the 1.5% or any insurance proceeds
219    payable by virtue of such loss or damage, or receive a refund of deposit(s), thereby releasing Buyer and Seller from all further obligations under this Contract.
220    **P. CLOSING PROCEDURE:** The deed shall be recorded upon clearance of funds. If the title agent insures adverse matters pursuant to Section 627.7841, F.S.,
221    as amended, the escrow and closing procedure required by this Standard shall be waived. Unless waived as set forth above the following closing procedures
222    shall apply: (1) all closing proceeds shall be held in escrow by the Closing Agent for a period of not more than 5 days after Closing; (2) if Seller's title is rendered
223    unmarketable, through no fault of Buyer, Buyer shall, within the 5 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt
224    of such notification to cure the defect; (3) if Seller fails to timely cure the defect, all deposits and closing funds shall, upon written demand by Buyer and within 5
225    days after demand, be returned to Buyer and, simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and recon-
226    vey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund, Buyer shall take title as is, waiving all
227    rights against Seller as to any intervening defect except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.
228    **Q. ESCROW:** Any Closing Agent or escrow agent (collectively "Agent") receiving funds or equivalent is authorized and agrees by acceptance of them to deposit
229    them promptly, hold same in escrow and, subject to clearance, disburse them in accordance with terms and conditions of this Contract. Failure of funds to clear shall
230    not excuse Buyer's performance. If in doubt as to Agent's duties or liabilities under the provisions of this Contract, Agent may, at Agent's option, continue to hold the
231    subject matter of the escrow until the parties hereto agree to its disbursement or until a judgment of a court of competent jurisdiction shall determine the rights of the
232    parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent
233    may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent
234    of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended.
235    Any suit between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any suit wherein Agent interpleads the subject matter
236    of the escrow, Agent shall recover reasonable attorney's fees and costs incurred with these amounts to be paid from and out of the escrowed funds or equivalent
237    and charged and awarded as court costs in favor of the prevailing party. The Agent shall not be liable to any party or person for misdelivery to Buyer or Seller of items
238    subject to the escrow, unless such misdelivery is due to willful breach of the provisions of this Contract or gross negligence of Agent.
239    **R. ATTORNEY'S FEES; COSTS:** In any litigation, including breach, enforcement or interpretation, arising out of this Contract, the prevailing party in such liti-
240    gation, which, for purposes of this Standard, shall include Seller, Buyer and any brokers acting in agency or nonagency relationships authorized by Chapter
241    475, F.S., as amended, shall be entitled to recover from the non-prevailing party reasonable attorney's fees, costs and expenses.
242    **S. FAILURE OF PERFORMANCE:** If Buyer fails to perform this Contract within the time specified, including payment of all deposits, the deposit(s) paid by
243    Buyer and deposit(s) agreed to be paid, may be recovered and retained by and for the account of Seller as agreed upon liquidated damages, consideration for
244    the execution of this Contract and in full settlement of any claims; whereupon, Buyer and Seller shall be relieved of all obligations under this Contract; or Seller,
245    at Seller's option, may proceed in equity to enforce Seller's rights under this Contract. If for any reason other than failure of Seller to make Seller's title mar-
246    ketable after diligent effort, Seller fails, neglects or refuses to perform this Contract, Buyer may seek specific performance or elect to receive the return of Buyer's
247    deposit(s) without thereby waiving any action for damages resulting from Seller's breach.
248    **T. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; FACSIMILE:** Neither this Contract nor any notice of it shall be recorded in any public
249    records. This Contract shall bind and inure to the benefit of the parties and their successors in interest. Whenever the context permits, singular shall include
250    plural and one gender shall include all. Notice and delivery given by or to the attorney or broker representing any party shall be as effective as if given by or to
251    that party. All notices must be in writing and may be made by mail, personal delivery or electronic media. A legible facsimile copy of this Contract and any sig-
252    natures hereon shall be considered for all purposes as an original.
253    **U. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's, personal representative's, or guardian's deed, as
254    appropriate to the status of Seller, subject only to matters contained in Paragraph VII and those otherwise accepted by Buyer. Personal Property shall, at the
255    request of Buyer, be transferred by an absolute bill of sale with warranty of title, subject only to such matters as may be otherwise provided for herein.
256    **V. OTHER AGREEMENTS:** No prior or present agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No mod-
257    ification to or change in this Contract shall be valid or binding upon the parties unless in writing and executed by the parties intended to be bound by it.
258    **W. SELLER DISCLOSURE:** There are no facts known to Seller materially affecting the value of the Property which are not readily observable by Buyer or which
259    have not been disclosed to Buyer.
260    **X. PROPERTY MAINTENANCE; PROPERTY ACCESS; REPAIR STANDARDS; ASSIGNMENT OF CONTRACTS AND WARRANTIES:** Seller shall main-
261    tain the Property, including, but not limited to lawn, shrubbery, and pool in the condition existing as of Effective Date, ordinary wear and tear excepted. Seller
262    shall, upon reasonable notice, provide utilities service and access to the Property for appraisal and inspections, including a walk-through prior to Closing, to
263    confirm that all items of Personal Property are on the Real Property and, subject to the foregoing, that all required repairs and replacements have been made,
264    and that the Property has been maintained as required by this Standard. All repairs and replacements shall be completed in a good and workmanlike manner,
265    in accordance with all requirements of law, and shall consist of materials or items of quality, value, capacity and performance comparable to, or better than,
266    that existing as of the Effective Date. Seller will assign all assignable repair and treatment contracts and warranties to Buyer at Closing.
267    **Y. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneous with Closing or deferred) with respect to the Property
268    under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, includ-
269    ing the execution of documents; provided (1) the cooperating party shall incur no liability or expense related to the Exchange and (2) the Closing shall not be
270    contingent upon, nor extended or delayed by, such Exchange.

FAR/BAR-7s    Rev. 7/04    © 2004    Florida Association of Realtors® and The Florida Bar    All Rights Reserved    Page 4 of 4

## **PROOF OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing has been served by electronic notice if registered in the Electronic Case Filing System, otherwise by first class U.S. Mail, to: Jon Waage, Trustee, P.O. Box 25001, Bradenton, FL 34206; all parties receiving notice via CM/ECF; and all parties on the Court's Mailing Matrix; on April 16, 2018.

BRIAN D. ZINN, LLC
*Counsel for Debtors*
1342 Colonial Boulevard, Suite K-230
Fort Myers, FL  33907
Telephone:  (239) 418-1529
Facsimile:  (239) 236-0295


   /s/ Brian D. Zinn
Brian D. Zinn, Esq.
Fla. Bar No. 012497
brian@zinn.law
www.zinn.law